| NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| --- | --- |
| GUILFORD COUNTY | SUPERIOR COURT DIVISION |
| | 18 CVS ____ |

| AMIAD U.S.A., INC., | |
| --- | --- |
| Plaintiff, | |
| v. | **COMPLAINT** |
| ADVANCED WATER TECHNOLOGIES INC., | |
| Defendant. | |

Plaintiff Amiad U.S.A., Inc. ("Amiad"), complaining of Defendant Advanced Water Technologies Inc. ("AWT"), submits the following in support of its claims:

## PARTIES AND JURISDICTION

1. Amiad is a California Corporation with its headquarters and principal place of business in Mooresville, North Carolina.

2. AWT is a New York Corporation with its principal place of business in New York, New York.

3. This Court has jurisdiction over AWT pursuant to N.C.G.S. § 1-75.4 in that AWT: entered into a contract with Amiad which is located in North Carolina; has done or is doing business in North Carolina relative to the claims in this action; submitted purchase orders for products with Amiad in North Carolina; received shipments of goods from Amiad in North Carolina; made payments to Amiad in North Carolina; and communicated to and with Amiad in North Carolina regarding the contract between the parties; as more fully discussed below.

## FACTS

4. On or about March 31, 2005, Amiad and AWT entered into an agreement (the "Agreement"), a true and accurate copy of which is attached to this Complaint as **Exhibit 1**.

5. In the Agreement, the parties agreed that AWT would be Amiad's exclusive distributor of certain water filtration products for the following territory: New York City; 5 boroughs; Nassau and Suffolk Counties. In the Contract, the parties further agreed that the Agreement would automatically renew on an annual basis subject to AWT meeting agreed upon quotas.

6. Pursuant to the Agreement, AWT submitted purchase orders for water filtration products to Amiad and, Amiad, in turn, submitted invoices for payment of these goods to AWT. Each of Amiad's invoices to AWT explicitly state that Payment Terms are "Inv+30 Days", meaning payment within 30 days after the date of the invoice.

7. The Agreement and related documents constituted a valid contract between the parties (the "Contract").

8. Beginning in late 2017, AWT fell substantially behind on payment of certain invoices (the "Past Due Invoices"), and failed to make payment within the time required under the Contract. The Past Due Invoices are attached hereto as **Exhibit 2**.

9. Amiad made numerous attempts to collect on the Past Due Invoices, including the following conversations:

   (a). On November 21, 2017, Sandi Thompson, Amiad's Accounts Receivable Specialist sent an email to Matt Kaye, of AWT, stating "Currently, this

account is showing $21,314.13 past due. Please review the attached current statement and advise when we can expect our next payment".

(b). On December 11, 2017, Ms. Thompson sent a follow-up email to Mr. Kaye stating "Your account is still showing $21,314.13 past due. Please review the attached statement and advise when we can expect our next payment. ..."

(c). On January 3, 2018, Ms. Thomson sent another follow-up email to Mr. Kaye stating "REMINDER! ... Please advise when we can expect the next payment. ..."

(d). On January 11, 2018 Ms. Thomson sent another follow-up email to Mr. Kaye stating "We have not heard anything from you. The last payment we received was in October of last year. Please review the attached statement and advise when we can expect payment. ..."

(e). On January 29, 2018 Ms. Thomson sent another follow-up email to Mr. Kaye stating "Any update on when we can expect payment?"

(f). On February 27, 2018 Ms. Thomson sent another follow-up email to Mr. Kaye stating "REMINDER! ... To date we still have not received payment for the past due invoices. Please review the attached statement and advise when we can expect payment."

(g). On February 27, 2018, Mr. Kaye responded "Understood, payments will start to come before too much longer, much appreciated."

(h). On March 14, 2018, Matthew Miles, Amiad's Director of Finance/Controller, sent an email to Mr. Kaye stating "We need to start

3

receiving payments. You owe over $21k with the oldest invoice dating back to August. **If payment isn't received by [end of the month] I will have to pursue other options."**

(i). On March 15, 2018, Mr. Kaye sent Mr. Miles an email stating " ... We are coming out of a rough few months but revenue is starting to come in now, we'll start paying down from the oldest first and catch up with all. Not sure if we can get to zero by the end of this month, but substantially there in any case. First payment(s) early next week. ..."

(j). A copy of the above email exchange is attached hereto as **Exhibit 3**.

10. Following the above email exchange, AWT paid Amiad just $6,664.68 on or about March 26, 2018. At that point, AWT was at least seven months overdue on the oldest of the Past Due Invoices.

11. On April 13, 2018, Michael Poth, Amiad's President sent AWT a letter, attached hereto as **Exhibit 4**, stating:

...

As you know, Advanced Water Technologies, Inc. ("AWT") has breached its distribution contract ("Contract") with Amiad USA, Inc. ("Amiad").

In particular, AWT has repeatedly failed to pay a long overdue invoice for Amiad equipment in the amount of approximately $21,314.13. Amiad has sent AWT several demands for payment over the last few months, each demand marked "high importance." But, AWT has failed to pay, and continues to fail to pay, this long past due amount. This conduct on the part of AWT is a clear breach of AWT's Contract with Amiad. Timely payment of invoices is one of AWT's most fundamental obligation under the Contract.

**Consequently, Amiad hereby <u>immediately terminates</u> the distribution contract between Amiad and AWT dated March 31, 2005 (a copy of which is enclosed for reference).**

4

Case 1:18-cv-00520-LCB-JLW   Document 2   Filed 06/19/18   Page 4 of 7

By separate letter, Amiad will seek collection from AWT of the financial damages Amiad has suffered as a result of AWT's breach of contract.

...

12. AWT's failure to timely pay amounts owed to Amiad was a material breach of the Contract, entitling Amiad to cancel the Contract.

13. By the above emails, Amiad gave AWT sufficient notice prior to cancelling the Contract.

14. On or about May 1, 2018, attorney Kristin Rosenblum, of the New York law firm Buhler, Duggal & Henry LLP, sent Mr. Poth a letter, a true and accurate copy of which is attached hereto as **Exhibit 5**, stating in relevant part "your notice of termination is rejected. ... AWT has not breached of [sic] the Agreement. ... Amiad has always maintained a flexible payment schedule with AWT, in accordance with the companies' course of dealings and industry standards. Moreover, Amiad cannot terminate the Agreement for non-compliance with a term that does not exist in the Agreement. ...". With Ms. Rosenblum's letter was included a check from AWT to Amiad in the amount of $17,399.63, which she states represents the "outstanding balance according to AWT's records". On the check, a true and accurate copy of which is attached hereto as **Exhibit 6**, is noted "balance due".

15. As of May 8, 2018 the total still owed by AWT to Amiad, not counting AWT's check was $18,085.27. An Amiad accounts receivable report run AWT's account on that date is attached hereto as **Exhibit 7**. AWT's check was therefore $685.64 *less than* the total amount due. Because AWT's check was not for the total amount due, but marked "balance due", Amiad did not cash it.

16. As of the filing of this Complaint, AWT continues to owe Amiad $18,085.27.

5

## COUNT ONE – DECLARATORY JUDGMENT

17. Paragraphs 1-16 are incorporated herein as if fully set forth.

18. An actual controversy exists between the parties regarding whether Amiad properly cancelled the Contract.

19. Under N.C.G.S. §§ 1-253 and 1-254, this Court has the power to interpret contracts and to declare the rights, status, and legal relations of the parties.

20. Accordingly, based upon the foregoing, Amiad is entitled to an Order declaring that it properly cancelled the Contract due to AWT's material breach.

## COUNT TWO – BREACH OF CONTRACT/MONEY OWED

21. Paragraphs 1-20 are incorporated herein as if fully set forth.

22. AWT is in breach of the Contract for failure to pay amounts owed to Amiad.

23. AWT owes Amiad a past-due balance of $18,085.27.

24. Amiad has been damaged due to AWT's breach in the amount of $18,085.27.

25. Amiad is also entitled to interest pursuant to N.C.G.S. § 24-5.

WHEREFORE, Plaintiff Amiad respectfully prays this Court for the following relief:

1. An Order declaring that Amiad properly cancelled the Contract due to AWT's material breach;

2. Judgment in the amount of $18,085.27, plus interest and costs as permitted by law; and

3. Such other and further relief as this Court deems just and proper.

This the 17 day of May, 2018.

WYATT EARLY HARRIS WHEELER, LLP
Attorneys for Plaintiff

BY: _____
Scott F. Wyatt
N.C. Bar No. 18754
336-819-6007
swyatt@wehwlaw.com
P.O. Drawer 2086
High Point, NC 27261-2086

BY: _____
Donavan J. Hylarides
N.C. Bar No. 44487
336-819-6009
dhylarides@wehwlaw.com
P.O. Drawer 2086
High Point, NC 27261-2086