IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| AMIAD U.S.A, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18CV520 |
| | ) | |
| | ) | |
| ADVANCED WATER | ) | |
| TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff Amiad U.S.A., Inc. ("Amiad") initiated this breach of contract action in Guilford County Superior Court on May 17, 2018. (ECF No. 2.) Defendant Advanced Water Technologies, Inc. ("AWT") removed the action to this Court on June 19, 2018, pursuant to 28 U.S.C. § 1332(a). (ECF No. 1 ¶¶ 5–6.) Before the Court is Defendant's Motion to Dismiss or, in the Alternative, to Transfer. (ECF No. 9.) For the reasons stated below, Defendant's motion to dismiss will be granted.

I. BACKGROUND

Amiad is a California corporation with its headquarters in Mooresville, North Carolina. (ECF No. 2 ¶ 1.) AWT is a New York corporation with its headquarters in New York, New York. (*Id.* ¶ 2.) In 2005, AWT and Amiad entered into a contract (the "Agreement" or the "2005 Agreement") that provided that "AWT would be Amiad's exclusive distributor of certain water filtration products" for New York City and Long Island. (*Id.* ¶ 4–5.)

In 2005, when the parties entered into the Agreement, Amiad was headquartered in Oxnard, California, and much of the negotiation and execution of the Agreement occurred in California. (ECF No. 10-1 ¶¶ 21–24.) Amiad moved its headquarters to Mooresville, North Carolina in 2011. (*Id.* ¶ 27; ECF No. 12-1 at 2 ¶¶ 4, 6.) Amiad alleges that "[b]eginning in late 2017, AWT fell substantially behind on payment of certain invoices . . . , and failed to make payment within the time required under the [Agreement]." (ECF No. 2 ¶ 8.) Amiad claims that "AWT's failure to timely pay amounts owed to Amiad was a material breach of the [Agreement], entitling Amiad to cancel the [Agreement]." (*Id.* ¶ 12.)

Amiad then filed this action, requesting a declaratory judgment and damages for breach of contract. (*Id.* ¶¶ 17–25.) AWT now moves to dismiss this case for lack of personal jurisdiction, or, in the alternative, to transfer this case to the United States District Court for the Southern District of New York. (ECF No. 9.)

## II.  STANDARD OF REVIEW

On a personal jurisdiction challenge, the plaintiff bears the burden of ultimately proving personal jurisdiction by a preponderance of the evidence. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). When, however, as here, the court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing—relying instead on the motion papers, supporting legal memoranda, and allegations in the complaint[1]—the plaintiff need only make a prima facie showing of personal jurisdiction. *See Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009); *Carefirst of Md.*,

---

[1] "The Court may also consider supporting affidavits." *Pathfinder Software, LLC v. Core Cashless, LLC*, 127 F. Supp. 3d 531, 538 n.2 (M.D.N.C. 2015).

2

334 F.3d at 396. "[A] plaintiff makes a prima facie showing of personal jurisdiction by presenting facts that, if true, would support jurisdiction over the defendant." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 561 (4th Cir. 2014) (citing *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003)). However, a threshold prima facie finding of jurisdiction does not settle the issue, as the plaintiff "must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n.5 (4th Cir. 2005).

When considering whether the plaintiff has made a prima facie showing of jurisdiction, the court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Universal Leather,* 773 F.3d at 558 (quoting *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir. 1989)); *see also Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 196 (4th Cir. 2018) ("[W]hen the parties have not yet had a fair opportunity to develop and present the relevant jurisdictional evidence, we have treated the disposition of Rule 12(b)(2) motions to dismiss for a lack of personal jurisdiction in conceptually the same manner as we treat the disposition of motions to dismiss under Rule 12(b)(6)."). "Once a defendant presents evidence indicating that the requisite minimum contacts do not exist, the plaintiff must come forward with affidavits or other evidence in support of its position." *Pathfinder Software, LLC v. Core Cashless, LLC*, 127 F. Supp. 3d 531, 538 (M.D.N.C. 2015) (quoting *Vision Motor Cars, Inc. v. Valor Motor Co.*, 981 F. Supp. 2d 464, 468 (M.D.N.C. 2013)). When both sides present

3

evidence, factual conflicts must be resolved in favor of the party asserting jurisdiction for the limited purpose of determining whether a prima facie showing has been made. *Id.*

## III. DISCUSSION

A federal district court can exercise personal jurisdiction over a nonresident defendant only if "(1) such jurisdiction is authorized by the long-arm statute of the state in which the district court sits; and (2) application of the relevant long-arm statute is consistent with the Due Process Clause of the Fourteenth Amendment." *Universal Leather*, 773 F.3d at 558. North Carolina's long-arm statute "permits the exercise of personal jurisdiction over a defendant to the outer limits allowable under federal due process." *Id.* (citing N.C. Gen. Stat. § 1–75.4(1)(d); *Dillon v. Numismatic Funding Corp.*, 231 S.E.2d 629, 630 (N.C. 1977)). The two-prong test therefore "merges into [a] single question" when North Carolina is the forum state, allowing the court to proceed directly to the constitutional analysis. *See id.* at 558–59; *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 391 (4th Cir. 2012).

Under the Due Process Clause of the Fourteenth Amendment, two paths permit a court to exercise personal jurisdiction over a nonresident defendant: general or specific personal jurisdiction. *Universal Leather*, 773 F.3d at 559. "General personal jurisdiction requires 'continuous and systemic' contacts with the forum state." *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 188 (4th Cir. 2016) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984)). Amiad does not claim that AWT had such contacts with North Carolina and does not assert that this Court has general personal jurisdiction over AWT. (ECF No. 12 at 6 n.2.) Instead, Amiad claims that this Court has *specific* personal jurisdiction over

4

AWT arising from AWT's contacts with Amiad in North Carolina. (ECF No. 2 ¶ 3; ECF No. 12 at 6–7.)

For specific personal jurisdiction, the defendant must have "purposefully established minimum contacts in the forum State" such "that [it] should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (internal quotation marks and citations omitted). Courts use a three-prong test to evaluate specific personal jurisdiction: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Perdue Foods,* 814 F.3d at 189 (quoting *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)).

In this matter, it is beneficial to first address the second prong of the specific personal jurisdiction test, "whether the plaintiff['s] claims arise out of those activities directed at the State," *id.*, because AWT conducted certain activities in North Carolina that are not connected with the claims at issue in this case. (*See* ECF No. 12-1 at 3-4 ¶¶ 14-20.) The Court will then address the extent of AWT's "purposeful availment" of the privilege of conducting activities in North Carolina. *See Perdue Foods*, 814 F.3d at 189.

**A. AWT's Contacts that Give Rise to Amiad's Claims**

The second prong of the specific personal jurisdiction test "requires that [AWT's] contacts [with the forum state] form the basis for the suit." *Manley v. Air Canada*, 753 F. Supp. 2d 551, 559 (E.D.N.C. 2010) (citing *Consulting Eng'rs*, 561 F.3d at 277). The analysis for this prong is "generally not complicated. Where activity in the forum state is the 'genesis of [the]

5

dispute,' this prong is easily satisfied." *Tire Eng'g & Distribution LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 303 (4th Cir. 2012) (alteration in original) (quoting *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 295 (4th Cir. 2009)); *see also Verizon Online Servs., Inc. v. Ralsky*, 203 F. Supp. 2d 601, 620 (E.D. Va. 2002) ("If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996))).

Amiad attempts to argue that that AWT's activities in North Carolina surrounding the parties' failed negotiations of a new distributor agreement should factor into the personal jurisdiction analysis. (ECF No. 12 at 2–3, 6–7.) During a period from 2015 to 2016, Amiad and AWT attempted to renegotiate the terms of their original 2005 Agreement. (ECF No. 12-1 at 3–4 ¶¶ 14–19.) After some time, the "negotiations fell apart in 2016" and "[n]o new agreement was ever signed." (*Id.* at 4 ¶ 19.) During such negotiations, Matt Kaye, the president of AWT, "visited North Carolina on at least one occasion" to discuss the potential deal. (*Id.* at 4 ¶ 16.) Also, "[d]uring the same time period (2014–2016), AWT [sent its] ultraviolet disinfectant products from New York to Amiad in North Carolina for Amiad to install on its filters before sending them back to AWT in New York." (*Id.* at 4 ¶ 20.)

Amiad argues that the parties' extensive negotiations in 2015–16, Mr. Kaye's visit to North Carolina, and AWT's practice of shipping ultraviolet disinfectant products to North Carolina should factor into this Court's analysis for personal jurisdiction. (ECF No. 12 at 6–7.) Amiad does not address, however, how its "claims arise out of those activities." *Perdue Foods,* 814 F.3d at 189. Amiad's claims for a declaratory judgment and breach of contract are

based on the 2005 Agreement and invoices which AWT allegedly failed to pay in a timely manner. (ECF No. 2 ¶¶ 8–25.) The parties' attempted renegotiation of the 2005 Agreement therefore does not give rise to any of Amiad's claims. (*See id.*) Further, AWT's alleged practice of shipping its ultraviolet disinfectant products to North Carolina is similarly unrelated to Amiad's claims; AWT stopped that practice before the invoices at issue were submitted in "late 2017." (ECF No. 2 ¶ 8; *see* ECF No. 12-1 at 4 ¶ 20); *see also Protocol, LLC v. Henderson*, 18 F. Supp. 3d 689, 703 (M.D.N.C. 2014) (concluding that a defendant's "infrequent visits to [the forum state] for conferences hosted by Plaintiff . . . are of minimal, if any, relevance to the specific jurisdiction inquiry because this case does not arise from those contacts").

Therefore, to avoid running afoul of the second prong of the specific personal jurisdiction test, the Court will not consider in its minimum contacts analysis AWT's actions surrounding the attempted renegotiation of the 2005 Agreement nor AWT's alleged practice of shipping its ultraviolet disinfectant products to North Carolina. *See Perdue Foods*, 814 F.3d at 189.

### B. Purposeful Availment

The first prong of the specific personal jurisdiction analysis directs the court to consider "the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State." *Consulting Eng'rs*, 561 F.3d at 278. This test requires the district court to evaluate whether "the defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there." *Universal Leather*, 773 F.3d at 559 (alteration in original) (quoting *Fed. Ins. Co. v. Lake Shore Inc.,* 886 F.2d 654, 658 (4th Cir. 1989)). This analysis is "flexible" and involves a case-by-case consideration of several

7

factors. *Id.* at 560 (quoting *Tire Eng'g & Distribution,* 682 F.3d at 302). Courts have generally considered the following nonexclusive factors:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

*Sneha Media & Entm't*, 911 F.3d at 198–99 (citing *Consulting Eng'rs*, 561 F.3d at 278). The relationship among the defendant, the forum state, and the litigation "must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden v. Fiore,* 571 U.S. 277, 284 (2014) (quoting *Burger King,* 471 U.S. at 475). The defendant cannot "be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts or of the 'unilateral activity of another party or a third person.'" *Burger King,* 471 U.S. at 475 (citations omitted) (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 (1984); *Helicopteros Nacionales,* 466 U.S. at 417).

Further, the mere existence of a contract with the out-of-state party, without more, cannot automatically establish sufficient minimum contacts. *Chung v. NANA Dev. Corp.,* 783 F.2d 1124, 1127–28 (4th Cir. 1986). Rather, in determining whether the defendant purposefully established minimum contacts with the forum state, courts must consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King*, 471 U.S. at 479.

8

AWT's contacts with North Carolina largely include sending purchase orders to Amiad, receiving shipments of goods shipped from North Carolina by Amiad, and communicating with Amiad regarding their contractual relationship. (ECF No. 12-1 at 3–6 ¶¶ 11–30.) Specifically, Amiad alleges:

> 11. . . . AWT continued to purchase Amiad's products from Amiad in North Carolina. AWT would send purchase orders to Amiad in North Carolina. Invoices for these products were then sent to AWT by Amiad from North Carolina, noting Amiad's location in North Carolina. The products were then shipped from Amiad in North Carolina to AWT in New York.
>
> 26. From July 2017 to March 2018, Amiad sold AWT the products listed on the purchase orders (sent by AWT to Amiad) and the invoices (sent by Amiad to AWT) . . . , which . . . are representative of the purchase orders and invoices customarily used in its business between Amiad and AWT. Amiad's invoices specifically list its location as 120-J Talbert Road, Mooresville, NC 28117. While AWT's purchase orders give an address for Amiad in Chicago, . . . that was simply the address where Amiad's bank received payments sent to Amiad. Amiad has no presence in Chicago, and AWT routinely sent its purchase orders to Amiad in North Carolina via email. The invoices were sent to AWT from Amiad in North Carolina. The invoices contemplated that the products would be sent from North Carolina.

(ECF No. 12-1 at 3 ¶ 11, at 5 ¶ 26, at 51–75.) Amiad further describes the parties' email communication, and a visit by an Amiad representative to New York, regarding the parties' business relationship during late 2017 to 2018. (*Id.* at 5–6 ¶¶ 25–30.)

AWT, in its brief and declaration, focuses on the inception of the parties' business relationship. (*See* ECF No. 10-1 ¶¶ 19–26; ECF No. 10 at 2, 8–9.) When the parties first entered into the Agreement in 2005, "all of Amiad's North American operations—including the fulfillment of purchase requests—took place in California," and AWT was under the impression that the operations "would continue to take place in California." (ECF No. 10-1

9

¶ 25.) AWT claims that it "did nothing to solicit, induce, or encourage Amiad to move its principal office to North Carolina or to begin performing its obligations under the Agreement in this state." (*Id.* ¶ 28.) Further, because the Agreement required a minimum amount of Amiad products to be ordered each year, AWT had to continue to place orders for Amiad products to avoid breaching the Agreement. (*See id.* ¶ 38.)

The key issue in this case is whether AWT's purchase orders, sent via email to Amiad, can provide a basis for finding personal jurisdiction. Generally, when a plaintiff unilaterally moves to a new state, the plaintiff's contractual partners are not necessarily subject to personal jurisdiction in that new state. *See Burger King*, 471 U.S. at 475 (stating that "unilateral activity of another party" cannot confer jurisdiction on a defendant); *Protocol*, 18 F. Supp. 3d at 697, 703–04. This principle also holds true when the defendant continues the parties' contractual relationship even after the plaintiff's move. *See Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994) (holding that an insurer's move to another state did not create jurisdiction for its insureds in the new state, even though its insureds continued to submit claims after it relocated); *Dychiuchay v. Grieshaber*, No. 2:14–CV–354 JCM (GWF), 2015 WL 476195, at *1, *5 (D. Nev. Feb. 4, 2015) (stating that it would be "absurd" to require defendants to "breach the contract or submit to jurisdiction in any state where plaintiff unilaterally decided to move"); *Gaines Pet Foods Corp. v. Martin Bros. Int'l.*, 692 F. Supp. 912, 915–16 (N.D. Ill. 1988) (concluding that twenty-eight purchase orders submitted to the new state after the move were not voluntary contacts because they could be "traced to [defendant's] pre-existing obligations under the distribution agreement").

In this case, the large majority of the eight factors considered in the court's specific personal jurisdiction analysis weigh in favor of AWT. For the first and second factors, AWT has attested that it does not maintain any offices, agents, or property in the forum state. (ECF No. 10-1 ¶¶ 7–9.) Third, the parties' allegations show that AWT never "reached into the State to solicit or initiate business." *Sneha Media & Entm't*, 911 F.3d at 198. As stated before, the parties' contractual relationship was formed when Amiad was headquartered in California. (ECF No. 10-1 ¶¶ 20–26; *see* ECF No. 12-1 at 2 ¶¶ 6–7.)

The closest factor is the fourth: "whether the defendant deliberately engaged in significant or long-term business activities in the State." *Sneha Media & Entm't*, 911 F.3d at 198. AWT submitted purchase orders to Amiad while Amiad was headquartered in North Carolina. (ECF No. 12-1 at 3 ¶ 11.) Those purchase orders were placed, however, in connection with the 2005 Agreement. Thus, it cannot be said that AWT "*deliberately* engaged in significant or long-term business activities in the State," *Sneha Media & Entm't*, 911 F.3d at 198 (emphasis added), because AWT did not have any control over Amiad's decision to relocate to North Carolina. Accordingly, the fourth factor does not weigh in favor of finding personal jurisdiction.

Fifth, there is no choice of law clause in the Agreement. *Sneha Media & Entm't*, 911 F.3d at 198; (*see* ECF No. 2-1). Sixth, the only "in-person contact[s]," *Sneha Media & Entm't*, 911 F.3d at 198, made by AWT with Amiad occurred in California, when the Agreement was executed, and in New York, where the parties met in November 2017 to "discuss the parties' future business prospects." (ECF No. 10-1 ¶¶ 23–24; ECF No. 12-1 at 5 ¶ 25.) Seventh, the Agreement did not require performance of any duties by either party in North Carolina. (*See*

ECF No. 2-1.) Lastly, eighth, "the nature, quality, and extent of the parties' communications about the business being transacted" does not weigh in favor of finding personal jurisdiction. Amiad introduced evidence showing that the parties emailed every few months from 2016 to 2018 regarding their relationship under the 2005 Agreement. (ECF No. 12-1 at 4–6 ¶¶ 21–30, at 77–96.) These communications were not sufficiently extensive, however, to overcome the factors above that favor a finding of no personal jurisdiction. *See Consulting Eng'rs*, 561 F.3d at 280 (concluding that the fact that the defendant reached out to the plaintiff in the forum state, "even when coupled with the cited communications, is not enough to overcome the factors noted above"); *Protocol*, 18 F. Supp. 3d at 701 ("[A]n exchange of communications between two parties, one of whom is located in the forum state, in furtherance of a contract, will not generally constitute purposeful contact with the forum state for purposes of jurisdiction.").

In sum, AWT's contacts with North Carolina in this case fail to reach the "purposeful availment" threshold. *See Consulting Eng'rs*, 561 F.3d at 278. Rather, these contacts, even when viewed collectively, are more aptly categorized as random, fortuitous, and attenuated, *see Burger King*, 471 U.S. at 475, such that an exercise of jurisdiction would offend "traditional notions of fair play and substantial justice," *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Therefore, this Court concludes that its exercise of personal jurisdiction over AWT would violate due process.

Because this Court has concluded that Amiad has not met its burden in demonstrating a prima facie case of personal jurisdiction over AWT, the Court will not address AWT's alternative motion for transfer of venue.

For the reasons stated herein, the Court enters the following:

**ORDER**

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss or, in the Alternative, to Transfer, (ECF No. 9), is GRANTED. Plaintiff's claims are hereby DISMISSED WITHOUT PREJUDICE.

A Judgment dismissing this action will be entered contemporaneously with this Order.

This, the 26th day of March, 2019.

    /s/ Loretta C. Biggs
    United States District Judge